## JAMES HUNT *v.* JAMES GORDON BENNETT.

It is settled, in the state of New York, by the case of *King* v. *Root*, (4 Wend. 113,) that an article in a newspaper, reflecting upon the character of a candidate for public office, is not a privileged communication.

This court concurs in the rule allowing, in proper cases, vindictive or exemplary damages in actions of tort.

Where such general rule was stated in a charge to a jury, but the court at the same time instructed them that the case at bar was not one wherein vindictive damages should be allowed; *held,* that an exception by the defendant to the charge in this respect could not be sustained, although the appellate court might deem the verdict excessive in the amount of damages awarded, and although the illegality of exemplary damages be assumed.

In an action against the editor of a newspaper for a libel contained therein, an averment in the complaint that the defendant was the proprietor thereof, and that the libellous matter was published in the paper, is a sufficient allegation of a publication by him.

Where—before the amendments to the Code of Procedure abolished the reply except in certain cases—an answer in an action of libel set forth the libellous matters and averred their truth, and the plaintiff, in his reply, controverted specific allegations in the answer, and then concluded with a general denial of all matters in the answer not particularly replied to; *held,* that the burthen of proving the matters averred in justification rested upon the defendant.

Evidence given for the purpose of justification, and failing therein, may be taken in mitigation of damages.

Where a part of a libellous publication charged the plaintiff, who was a public officer, with having beaten the person of an intoxicated woman arrested by him, and one of the plaintiff's witnesses testified that a complaint to a magistrate was made by a third person against the plaintiff for such alleged offence; *held,* that the fact of the complaint was not matter of justification, although it might be considered in mitigation of damages.

The defendant, at a later stage in the trial, having offered in evidence an original complaint to the magistrate, as made by the woman herself; it was held immaterial, as the mitigation could as well be drawn from the fact that the complaint had been made by a third person on her account, as that she had personally appeared before the magistrate.

The circumstances of the alleged beating having been stated differently by two witnesses, testifying, one for the plaintiff and the other for the defendant; the fact that the complaint in question was lodged by the woman, would not avail the defendant to impeach the plaintiff's witness, both the witnesses having agreed in testifying that the complaint was preferred by such third person, and not by the woman herself.

Hunt *v.* Bennett.

In order to justify the granting of a new trial, on the ground of an exclusion of evidence, the appellate court must be able to perceive that the jury might, in some degree, have been influenced by the testimony offered.

A publication is libellous where its necessary effect is to diminish the plaintiff's reputation for respectability, impair his condition and abridge his comforts, by exposing him to disgrace and ridicule.

It is not error for the court, in the charge, to express an opinion that a publication is libellous, where the rules of law are given to the jury, and they are thereby enabled themselves to determine the question.

THIS action was instituted against the proprietor and editor of the "New York Herald," and was founded upon the following article, published in that newspaper :

"Who shall be special justice of police?

"This vexed question has at last been settled, and the thirty-six anxious applicants who have considered themselves almost appointed, had better withdraw their names from the list as soon as possible, and hide their diminished heads in shame, and look out for some office which there is more chance of their obtaining. The thirty-seventh application has been made, and the character, talents, abilities and immense popularity of the applicant, must insure his appointment—there cannot be a dissenting voice. The applicant has been making himself conversant with the duties of the magisterial office, by sitting in the police office, day after day, almost from sun to sun, toasting his shins by the stove, and rubbing the hair off the back of his head by leaning it against the sanded pillar. His claims are many; he was a native American, and accepted the office of Sunday officer of the sixth ward, without fee, in order to reform the morals of the bloody sixth; he was active, to a fault, in informing against many of the largest and most respectable hotel keepers for selling liquor on the Sabbath, in violation of the ordinances. His character is established beyond a question; his temper is as mild as ass's milk. Was not he the man who, in the discharge of his duty, arrested a poor drunken woman, and for some expression of hers, beat her, like a noble hearted Brutus, with a whalebone cane? Did he not, on the trial of the cause, ad-

mit that he had struck the poor creature, and said that such was his nature that he believed if he was placed in the same position he should do it again? Did he not tell his honor, the recorder, in the most positive manner, that he was both an attorney and a counsellor in the Superior Court or the Court of Common Pleas, and was it not proved false? Did he not, in the County Court, solemnly declare that he did not know the result of his own trial, and refer the counsel to the reporters for information, declaring that they knew more of it than he did? Can these things be overlooked? Will the common council prefer such men as Major Prall, Barnabas W. Osborne, Roome, (present commissioner of almshouse,) Looftborough, (superintendent of the almshouse,) Morrison, (member of assembly,) Allen, Hufty, Cox, (the keeper of the city prison,) Allen, and the twenty-three others, when a James Hunt can be placed upon the bench?"

The complaint alleged that the defendant was the proprietor of the paper; that the paper was issued; and that the above matter was published therein. Damages were laid at $5,000.

The defendant answered, making, with others, the following averments:

"That in or about the month of April, 1845, and before the happening of the matters complained of in the complaint, the office of special justice of police, in the city and county of New York, became and was vacant, and it was in the power and the duty of the then members of the common council or corporation of the said city, to appoint some person to fill such vacancy; and there were numerous applicants for the said vacant office, amounting in all to thirty-seven; and among the said applicants was one James Hunt, who, for some time before becoming such applicant, sat in the police office in the complaint referred to, day after day, almost from sun to sun, and while there was accustomed to, and did warm or toast his shins by the stove there, and rubbed the hair off the

back of his head by leaning it against a sanded pillar there, and who had prior thereto been one of a number or party of persons calling themselves and known as native Americans; and who had, also, prior to such application, held the office of Sunday officer, in the sixth ward of the city of New York, and who, on the 19th day of August, while he held such office as last aforesaid, went before one William W. Drinker, who then was one of the justices for preserving the peace in the city of New York, and who was then sitting and acting as such justice, at a police office in the said city, and then and there laid an information before the said last named justice, duly subscribed and affirmed by him, the said last named James Hunt, to be true, and which said information was and is in the words and figures following, that is to say :"

(Here was set forth a copy of an alleged complaint, made by the plaintiff, against sundry persons for selling spirituous liquors on Sunday, they not being hotel keepers, or otherwise entitled to the operation of the exemptions contained in the laws relating to the Sabbath.)   The answer proceeded :

" That the persons in the information respectively named were, or some of them were, many and some of the largest and most respectable hotel keepers in the city of New York. And the said last named James Hunt, on or about the first day of September, 1844, and while he held the office of Sunday officer aforesaid, and in discharge of his duty, arrested a poor and drunken woman, named Mary Ferris, and for some expression of hers, beat her with a whalebone cane, or a cane; and afterwards the grand jury, in and for the city and county of New York, returned a true bill of indictment against the said last mentioned James Hunt, for an assault and battery on the person of the said Mary Ferris ; and on or about the fifth day of December, 1844, he was tried on such indictment before the then recorder of the city of New York ; and on such trial the said last named James Hunt admitted that he struck the said Mary Ferris, and said, ' such is my nature, that I believe, if placed in the same position, I should do it' (meaning the striking of the said Mary Ferris)

' again,' or words to that or a like effect ; and further stated to the said recorder, in the most positive manner, ' I am an attorney and a counsellor of the Superior Court or Court of Common Pleas,' or words to that or like effect, and such statement was false ; and in truth and in fact the said last named James Hunt was not, at the time he made such statement, an attorney and a counsellor of the Superior Court or Court of Common Pleas ; and after the said last mentioned trial, and in or about the month of January, 1845, the said last named James Hunt, in the course of a trial then being had in the County Court in the county of New York, solemnly declared, ' I do not know the result of my own trial;' (meaning the said trial on the said indictment,) ' they, I refer you to the reporters for information, they know more of it' (meaning the said trial) ' than I do,' or words to that or like effect.

" And the defendant says, that the before mentioned facts and circumstances are the facts and circumstances mentioned and set forth in the words and figures in the complaint set forth, and therein alleged to be a libel of and concerning the plaintiff.

" And the defendant says, that the said words and figures in the complaint set forth were written and printed of and concerning, and relate only to the James Hunt mentioned and referred to in the article aforesaid, and of and concerning or relating to no other person whomsoever. But whether or not the said plaintiff is the James Hunt described in said article, defendant has no knowledge thereof sufficient to form a belief.

" And the defendant says, that if the said words and figures in the complaint set forth are of and concerning the plaintiff, then, subject as aforesaid and on information and belief he says, that the said words and figures in the complaint set forth are true, and the plaintiff was an applicant for the said vacant office of special justice ; was one of a party whose members were known as native Americans ; was a Sunday officer ; laid the information for selling liquor on the Sab-

bath; arrested and beat the said Mary Ferris; was tried; made the said false statement to the said recorder; made the said admission as to his nature, and the said solemn declaration in the said County Court, and did the several other acts hereinbefore mentioned and in the manner, and as hereinbefore, and in the said words and figures in the complaint set forth alleged."

The answer concluded with a denial of "any great damage," and claimed that the plaintiff was not entitled to recover any sum whatever.

The pleadings were filed before the amendments to the Code of Procedure, in effect abolishing a reply, with an exception not applicable to cases similar to this. A reply was served, as follows:

"That as to the allegations in the answer respecting the vacancy of the office of special justice of police in the city and county of New York, and the power and duty of the then members of the common council or corporation of said city in respect thereto, and the names and number of applicants for such vacant office, and what one James Hunt did, or was accustomed to do, or had been, as therein alleged, the plaintiff denies the same.

"And the plaintiff, for further reply to the answer of the defendant, says, that as to the allegations in said answer, that the facts and circumstances in said answer therein before mentioned are the facts and circumstances mentioned and set forth in the words and figures in the complaint set forth, he denies any knowledge or information thereof sufficient to form a belief, and controverts such allegations; and he alleges that if such facts and circumstances, or any of them, are any of the facts and circumstances mentioned or referred to in the complaint, they are not all the facts and circumstances mentioned or referred to in the complaint, and do not fully or fairly mention or set forth all or any of the facts and circumstances in the complaint mentioned or referred to; and the plaintiff, for further reply to the answer of the defendant,

denies each allegation therein other than such as have otherwise been replied to or avoided."

The cause was tried before DALY, J., and a jury. Before the jury was empannelled, the defendant moved for judgment on the pleadings, insisting that the answer contained a demurrer, and on the grounds—First, that the alleged libel was the defendant's opinion of the plaintiff's character and qualifications for a public officer, and whether it was correct or incorrect, he had a right to express it, and he was protected in doing so until the plaintiff alleged in his complaint, and proved on the trial, that it was done falsely and maliciously, or without reasonable or probable cause. Secondly, there was no allegation in the complaint that it was done falsely or maliciously, or that it was published without probable cause to believe its truth. The motion was denied.

After the jury was empannelled, the defendant again moved for judgment on the grounds above stated, which motion was also denied, and the defendant's counsel excepted.

The defendant insisted that the whole gravamen of the defence set up by the answer was admitted by the reply.

The parties proceeded with their proofs, to which it is unnecessary to make further reference than is contained in the opinion.

The defendant was assigned the affirmative of the issue. At the close of the testimony, his counsel moved to dismiss the complaint, on the ground, among others, that upon the pleadings in the cause, and the matters given in evidence, there was no cause of action on the part of the plaintiff against the defendant.

The motion for a nonsuit, and to dismiss the complaint, was denied.

The defendant requested the judge to charge the jury:

1. That all communications made honestly and without malice in discussing the fitness of candidates for public office, are privileged, whether such communications be true or not; and the occasion justifies the defendant.

2. That if the jury believed that this article was hon-

estly written, in the belief that all its statements of fact were true, and that it was made as a criticism upon Mr. Hunt's qualifications to discharge the duties of police justice, they should find for the defendant, without regard to the proof by the defendant of its truth. That the defendant has the right to ridicule any thing which was ridiculous; and he had the same right to speak of the plaintiff sarcastically, if such ridicule and sarcasm were warranted by the plaintiff's conduct, or tended to show his unfitness for office, and were confined to that object. (Lord Ellenborough, *Carr* v. *Hood*, 1 Camp. 354; 1 Starkie on Slander, 272.)

3. That if the jury believe that the article was written with a full belief that it related to the qualifications of a candidate for office, the occasion furnishes a full defence, whether it was true or not.

4. That if the jury believe that the article was written with an honest intention " to censure what is hostile to morality," (per Lord Ellenborough, *Tabert* v. *Tipper*, 1 Camp. c. 350,) the defendant is entitled to their verdict.

5. That with a view to determine whether the plaintiff was a candidate for office within the rule, the remark of Parsons, Chief Justice, in *Commonwealth* v. *Class*, 4 Mass. Rep. 163, is to be treated as sound law. " And every man holding a public elective office may be considered as within the principle; for as a reëlection is the only way his constituents can manifest their approbation of his conduct, it is to be presumed that he is consenting to a reëlection if he does not disclaim it." That this rule applies as well to a police officer who receives an appointment, as to officers who are elected by the people, as they have the same interest in knowing his fitness. " That the burthen is on the plaintiff (Hunt) to satisfy them that the libel was malicious, and that if the plaintiff has not proved the malice beyond any reasonable doubt, that doubt should be in favor of the defendant." And that this article on its face purports to be, and *prima facie* is, protected.

The court, among other things, charged the jury, that if

the necessary effect of the publication was to diminish the plaintiff's respectability and abridge his comforts, by exposing him to disgrace and ridicule—if its tendency was to impair his condition, or alter his situation in society for the worse—it was libellous. The judge then read the publication, and said that there could be little doubt that it was libellous. It describes the plaintiff as the man who arrested a woman and beat her with a whalebone cane, and who said that he would do it again. It refers to his temper. It charges that he was active to a fault in informing against the best hotels. As he was a public officer, there was nothing discreditable in his giving information of any violation of the law; and it was difficult to say what was meant by his being active to a fault. Did the writer mean to imply that he went beyond his duty in giving information? That he harassed and annoyed by unnecessary or unfounded complaints? One who takes upon himself the office of public informer is not always regarded in a favorable light. There may be a certain degree of odium attaching to such a person. He may be an object of public dislike from the motives which influence him, and from the manner in which he acts. Was it intended to hold up the plaintiff in this light? To portray him as a meddlesome and officious person, going further than his duty or the nature of his office required? But independently of this, the whole scope and import of the article is libellous—its tendency being to subject the plaintiff to a certain share of public odium, or to hold him up to ridicule. The court then explained to the jury that certain communications were privileged, and having defined a privileged communication, he charged that this was not a privileged communication, and that the only inquiry was whether it was true. That if what was said in the article respecting the plaintiff was true, the publication was justifiable, and if the defendant had established that he had simply published the truth, he was entitled to a verdict. The judge examined the evidence upon this point, and submitted the question to the jury. He then, as a general instruction upon the question of damages, said, that

if the plaintiff was entitled to recover, he was entitled to a sufficient sum by way of damages to indemnify him for the injury which might be presumed to follow the publication of such an article. That when the publication was libellous upon its face, the party libelled was not required to show that he had sustained damage. The law presumed, in such a case, that he did. It was impossible, in the nature of things, for a party to know the precise extent to which his character might be injured by the imputation cast upon it. To show by legal proof how far his position in society had been affected, would be difficult, if not impossible. He might show that he had sustained pecuniary injury in particular instances, but to trace the slander to all its consequences, to ascertain how far it had influenced the judgment of his fellow men, and had consequently affected his standing as a member of the community, would be beyond his power. The law, therefore, presumed in the case of oral defamation, when the imputation conveyed by the words was of so grave a character as to become actionable, that the party defamed must necessarily be injured, and it drew the same presumption when libellous matter was printed and diffused by means of a public newspaper. In neither case was it essential to maintain the action that the plaintiff should show how or in what manner he had been injured by the publication. The law would presume that he was injured in proportion to the nature of the defamation. It was the interest of society that every man should be protected in his good name and reputation; that he should not be maliciously or wantonly defamed or exposed to public ridicule or contempt; if thus injured, the law gave him the right of action to obtain compensation; in that action he was not only entitled to recover to the full extent of the injury done him, but a jury might go further, and if the circumstances of the case warranted it, increase the amount of damages as a punishment to the slanderer. This was what was called vindictive damages, or smart money, but it was not usual to give it, except in cases when, in addition to the legal presumption of malice which the law inferred from the want

of truth in the defamatory matter, it appeared that the publication had been dictated on the part of the defendant purely by a malevolent motive. Nothing of the kind appeared here. The defendant was absent at the time of the publication in Europe, and there was nothing in the case that called for vindictive damages.

Exceptions were entered on behalf of the defendant.

The jury found a verdict for the plaintiff for one thousand dollars.

A motion for a new trial was made at a special term, where the following opinion was delivered by

DALY, J.—The principal point relied upon on the motion for a new trial was, that the publication being in a public newspaper, and relating to a candidate for a public office, was privileged. I expressed the opinion upon the argument, that that question was passed upon by the Court of Errors in *Root* v. *King*, 4 Wend. 113, and now that I have had an opportunity to examine the case fully, I am satisfied that the question is *res adjudicata*, and that we are not at liberty to consider it.

I thought the amount of damages very large under the circumstances, the defendant being absent and knowing nothing about the publication; but after a very full examination of the cases, I am of opinion that we cannot interfere. (See cases collected in Graham on New Trials, 426; Cook on Defamation, 171.)

A general exception was taken to the charge of the court upon the question of damages. Doubts have been expressed in some recent cases, whether a jury, in an action of defamation, have a right to give vindictive damages. (*Watson* v. *Wife*, 2 Cush. 133; *Howard* v. *Sexton*, 4 Com. 161; *Bush* v. *Prosser*, 13 Barb. 221.) But the court have uniformly held that they have that right; and in this case, though the jury were told that where the circumstances of the case warranted it, vindictive damages might be given, they were also

told that there was nothing in this case that called for vindictive damages.

The motion for a new trial having been denied, the defendant appealed to the general term.

*Benjamin Galbraith, Peter Y. Cutler* and *David Dudley Field,* for the defendant, cited 2 Chit. Pl. 623 ; Com. Dig. Action for Defamation, G. 5 ; *Root* v. *King,* 7 Cow. 613, 625 ; *S. C.* 4 Wend. 136 ; *Smith* v. *Ashley,* 11 Met. 486 ; 1 Green. Ev. 448, 462 ; Taylor Ev. 298, 1,291, 1,300, 1,324 ; Best on Ev. 723 ; 5 C. & P. 385 ; 4 Leigh, 405 ; 2 Bailey, 118 ; 8 Mart. N. S. 267 ; *Blanchard* v. *Thorn,* 5 Johns. 508 ; *Washburn* v. *Cook,* 3 Denio, 113 ; *Brown* v. *Croome,* 2 Stark. C. 297 ; *Duncomb* v. *Daniel,* 8 C. & P. 213 ; *Fairman* v. *Ives,* 5 Barn. & Ald. 647 ; *Vanderzee* v. *McGregor,* 12 Wend. 545 ; *Bennett* v. *Deacon,* 2 Com. B. 628 ; *Coxhead* v. *Richards,* ib. 591 ; *Ex. Hingston* v. *Kelley,* 18 Law Jour. 360 ; *Bromage* v. *Prosser,* 4 B. & C. 255 ; 4 Mass. 169 ; *Dolloway* v. *Turrill,* 26 Wend. 383 ; *Baylis* v. *Lawrence,* 11 Adol. & El. 920 ; 4 Bing. 195 ; 6 M. & W. 105 ; 28 Eng. L. & E. 417 ; 2 Green. Ev. 253 ; 23 Wend. 425 ; *Cook* v. *Ellis,* 6 Hill, 467 ; *Clarke* v. *Newman,* 1 Exch. 131 ; *Tremain* v. *Cohoes Co.,* 2 Comst. 164 ; *Dain* v. *Wykoff,* 3 Seld. 191 ; *Taylor* v. *Church,* 4 ib. 452, and 1 E. D. Smith, 279 ; 1 M. & S. 842 ; 10 Law Rep. 49 ; 10 Iredell, 67 ; 4 Cush. 273 ; 6 id. 75 ; 6 Texas, 266 ; 12 Johns. 234 ; 15 Mass. 365 ; 3 Story, 1.

*Thomas R. Lee,* for the plaintiff, cited act of 1844, p. 469, chap. 315 ; *M'Govern* v. *O'Donaghue,* 23 Wend. 26 ; *Snyder* v. *Andrews,* 6 Barb. 43, 47 ; *Rikeman* v. *Delavan,* 25 Wend. 187, 201 ; *Dolloway* v. *Turrill,* 26 ib. 383, 191 ; *Snyder* v. *Andrews,* 6 Barb. 43, 56 ; *Mathews* v. *Beach,* 5 Sand. R. 266 ; *Fero* v. *Ruscoe,* 4 Comst. 162 ; *Root* v. *King,* 7 Wend. 613 ; *Coleman* v. *Southwick,* 9 Johns. R. 51 ; *Southwick* v. *Stevens,* 10 ib. 443 ; *Coffin* v. *Coffin,* 4 Mass. 1.

By THE COURT. DALY, J.—After hearing the questions

which I passed upon, on a motion for a new trial at the special term, re-argued, my opinion remains unchanged. I still think that the case of *Root* v. *King*, 4 Wend. 113, is decisive upon the point whether or not the publication was privileged, and that we would not be justified in granting a new trial on the ground of excessive damages.

All that was said in respect to vindictive damages was, that where the circumstances of the case warranted it, a jury had the right to increase the amount of damages as a punishment to the slanderer; that it was not usual to give vindictive damages, or smart money, except in cases where, in addition to the legal presumption of malice which the law inferred from the want of truth in the defamatory matter, it appeared that the publication had been dictated by a purely malevolent motive. This was merely saying, that in a proper case, the jury had the right to give vindictive or peremptory damages, and this we have frequently held. (See *Taylor* v. *Church*, 1 E. D. Smith, 279, and cases there cited.) But the jury were also told that this was not a proper case to give such damages; that the plaintiff was absent in Europe at the time of the publication, and that there was nothing to show that the publication was dictated by a malevolent motive on his part; that there was nothing in the case that called for vindictive damages. This was instructing the jury not to give vindictive damages, and was certainly going as far as the defendant could have asked.

The complaint averred that the defendant was the proprietor of the paper, and that the libellous matter was published in his paper. This was a sufficient averment of a publication by him. (*The King* v. *Gutch*, 1 Mood. & Mal. 433; *The King* v. *Alman*, 5 Burr, 2,689; 2 Starkie on Slander, 30.)

The publication was admitted by the answer, which set up the matters as a justification. The answer contained a general averment, upon information and belief, that if the words and figures in the complaint set forth were of and concerning the plaintiff, they were true. Regarding this averment

as equivalent to an averment of the truth of the publication, the defendant undertook thereby to justify it by proving its truth. He also, in addition to the general justification, set out facts and circumstances alleged in the publication, (but not every fact or circumstance therein stated, as, for instance, the fact that Hunt accepted the office of police justice *without fee*, to reform the morals of the sixth ward,) and then alleged that Hunt did the act in the answer set forth, and in the words and figures in the complaint alleged. Giving this, also, the effect of a general justification, the defendant took upon himself the burden of showing that the publication was true, unless the plaintiff, by his reply, admitted its truth. It is urged that the reply did not take issue upon the truth of the allegations in the answer. The reply is somewhat loosely drawn, a circumstance that may well be attributed to the confused and formless character of the answer; but, taking the two together, the reply traverses with sufficient certainty the justification set up by the answer. It denies that the circumstances therein set up were all the facts and circumstances mentioned in the complaint, and this was true; but the reply controverts these allegations, as well as each allegation in the answer, other than those which had been previously replied to or avoided. This was specific enough. The issue to be tried was the truth of the publication, the duty of proving which rested upon the defendant, and his motion for judgment upon the pleadings was properly denied.

The evidence given by the defendant fell short of the proof of a justification, but he was entitled to rely upon it in mitigation of damages. The plaintiff also gave evidence on his part. He examined the witness, Hasbrouck, and his account of the transaction respecting the woman, Mary Ferris, conflicted with that of the defendant's witness, Martin, as to the extent or severity of the alleged assault upon her by Hunt, as well as to the cause or provocation for it. The plaintiff's witness, Martin, and the defendant's witness, Hasbrouck, both testified that the complaint upon which Hunt

was arrested for the alleged assault upon the woman, was made by Martin.   Hasbrouck testified that Martin preferred the complaint, and that the woman did not; and upon his cross examination by the defendant, reiterated this statement. Upon the close of the witness' cross examination, the defendant offered in evidence the original complaint in the form of an affidavit, appearing to have been made by Mary Ferris, which, being objected to, was excluded by the judge, and the defendant excepted.

Though the plaintiff had shown by his own witness, Martin, that he (Martin) made the complaint, the defendant was not precluded thereby from showing, if it was material, that the fact was otherwise.    (1 Greenleaf Ev. § 443.)    The ground upon which the complaint was excluded does not appear from the case, nor have I any recollection of the circumstances attending the offer, and the rejection of it as incompetent testimony.   From the case, it appears to have been offered as the original complaint; and it must now be assumed that it was conceded on the trial to be the original complaint, or that the defendant, in connection with his offer, was prepared to show that it was; and the question we are now called upon to determine is, whether the defendant was entitled to give the affidavit in evidence ?

It is insisted that he was entitled to do so, upon the grounds, *first*, as tending to impeach the accuracy of the witness, Hasbrouck's, recollection of the transaction, his account of it, materially qualifying or conflicting with the account given by the defendant's witness, Martin ; and *secondly*, that he was entitled to show that a complaint was preferred by Mary Ferris, as one of the facts connected with the transaction, and material and important as general evidence in mitigation, to show that some foundation at least existed for the publication in question.   The allegation in the publication was, that Hunt had arrested a poor drunken woman, and, for some expression of hers, beat her with a whalebone cane.   The defendant had shown, by the witness, Martin, that Hunt, having Mary Ferris in custody, beat her, while she was in a state of intoxica-

tion, with a whalebone cane, because she did not walk fast enough, and that the woman screamed, &c. This was proving what was alleged in the publication, except that the beating was for some expression of hers—a fact not very material, or which might be inferred as having taken place from Martin's statement, that she was beaten because she would not walk faster. The fact that a complaint was made against Hunt would not be evidence of the truth of this part of the publication, though it might be admissible as a circumstance in mitigation ; and if admissible as in some degree extenuating the publication, by divesting it of the character of a willful attempt to injure the plaintiff, without color of excuse or palliation, it could not be material whether it was made by the woman herself, or by a spectator of what had occurred. In other words, it may have furnished some excuse for the publication to show that a complaint was preferred against Hunt for assaulting the woman ; but I am at a loss to perceive what additional weight would or could have been added to that excuse by proving that the complaint was in fact made by the woman herself, and not by Martin. If the conduct of Hunt induced a bystander to interfere, and lodge a criminal complaint against him for his acts, that was a stronger circumstance against Hunt than that the complaint was made by the injured party. It is said, that if the woman did not make a complaint, that was a circumstance to show that she had not been abused ; and if she did make one, that it was a circumstance to show that she had been. Such might be the effect if the plaintiff had given evidence to show that no complaint had been made, which he did not, as his testimony showed that a complaint was actually made.

As the plaintiff's witness, as well as the defendant's, swore that the complaint was preferred or lodged, to use the language of the two witnesses, by Martin, proof of the fact that it was made by Mary Ferris would operate equally to impeach the general accuracy of both witnesses ; and as they were the only two witnesses who testified as to the treatment of the woman, I am at a loss to perceive how the introduction of

this testimony could have benefited the defendant. If, after proving the fact to be otherwise than as stated by Martin and Hasbrouck, he had urged to the jury that Hasbrouck's recollection of what had taken place was not to be relied on, the plaintiff was entitled to urge that Martin stood precisely in the same position. The effect of the proof of this circumstance left both witnesses, as to their general accuracy, exactly balanced. Giving it its full effect, it did not show, or have any tendency to show, which of the two was the most accurate; and unless we can see that testimony, which was excluded, might have had an influence upon the jury in determining a question of fact upon testimony which was conflicting, we are not to grant a new trial. It is probable that Martin may have complained orally on behalf of the woman to the justice, though the affidavit, which is the formal complaint upon which process issues, was drawn up in the name of, and sworn to by her, and that what they understood and meant to convey by the lodging or preferring of a complaint, was a representation made by Martin to the justice. But we have no right to assume that such was the fact, and I put my denial of the plaintiff's right to a new trial, for the exclusion of the testimony, therefore, solely upon the ground already stated—that it could have no effect upon the jury in determining which of the two statements, that of Martin or of Hasbrouck, was the most accurate or the most worthy of belief. That they were not entitled to draw any inference from it, favorable to the one and unfavorable to the other, but that it left both witnesses, as to the general accuracy of their recollection, upon an exact equality; and such being the effect of it, the defendant lost nothing by its exclusion.

The jury were told that if the necessary effect of the publication was to diminish the plaintiff's respectability and abridge his comforts, by exposing him to disgrace and ridicule; if its tendency was to impair his condition or alter his position in society for the worse, it was libellous, and that there could be little doubt but that the publication in question was libellous; that the whole scope and tendency of it

was libellous. This was expressing an opinion as to whether or not the publication in question was libellous; but, as it was coupled with a definition sufficient to enable the jury to know what in law constituted a libel, it was submitting it to them to pass upon, accompanied with an opinion of the judge that it was libellous, which they might follow or not, as they thought proper. The jury found that it was, and their finding cannot be disturbed.

Order denying a new trial affirmed.